## McLaughlin v. Gerdts

*Thomas E. Africa,* for plaintiffs.
*William J. Kelly,* for defendants.

WOLFE, *P.J.*, June 18, 1981—For disposition and after argument are the preliminary objections of defendants to plaintiff's complaint in assumpsit.

## MOTION TO STRIKE IMPERTINENT MATTER

Giving rise to this objection is an agreement under date of February 25, 1980 wherein plaintiffs agree to construct a Viceroy home for defendants for the principal amount of $66,864 generally having the specifications and payment schedules set down therein with a final provision that defendants are to "provide a complete written contract to be drafted by an attorney at the buyers' expense."

Subsequent to this agreement on March 27, 1980 the parties entered into a more extensive contract wherein the basic obligations of the parties are again set down for the construction of the home for defendants with additional work "change order" attached thereto providing for any extra work not agreed upon and the payment therefor as construction progresses.

Plaintiffs' complaint alleges the existence of both of these agreements and specifically in Paragraph 5 alleges:

". . . the Defendants agreed to have their attorney prepare a formal written Agreement to include the entire understanding of the parties as it related to the impending construction of the 'Squire' Viceroy home."

Paragraph 6 of the complaint alleges the instrument of March 27, 1980 contains all of the parties' prior understanding regarding the construction of the home.

The complaint carries three counts founded in the March 27, 1980 agreement and no reference is made to the February 25, 1980 agreement and there is no reference in "Exhibit C" to the earlier agreement being the extra-work provisions.

Defendant argues the complaint in reference to the February 25, 1980 agreement should be stricken as the complaint does not allege any fraud, accident or mistake and therefore the agreement of March 27, 1980 is the controlling agreement.

From a reading of the complaint it cannot be discerned why the March agreement was pleaded since there is no apparent carry-through to the February agreement. At argument, however, we were told the reason for the earlier agreement allegation is because of certain "trimming in" and other details which plaintiffs did in the construction work. This argument is inappropriate because Paragraph 22 of the complaint alleges when plaintiffs left the job site (due to non-payment) they had completed from 98 percent to 99 percent of the total construction of the home "as contemplated in the contract of March 27, 1980, and as supplemented by the 'additional work authorization' of September 3, 1980." We make reference to this because it appears from the pleading no reliance was made on the earlier

agreement subsequent to the consummation of the second tract.

It is now axiomatic the parol evidence rule will not permit the altering of a written contract unless there is fraud, accident or mistake or where it is admitted the written agreement did not express what the parties intended: Scott v. Bryn Mawr Arms, 454 Pa. 304, 312 A. 2d 592 (1973). Here, however, we are not strictly dealing with the parol evidence as any reference of alteration modification or addition would be made to the earlier agreement which is reduced to writing. In our opinion this is a classical clinical case where the parties preliminarily entered into a written contract initially to be subsequently encompassed in a final written contract wherein the initial merged into the latter. Indeed, the "general conditions" of the March 27, 1980 agreement unequivocally states it is the entire contract between the parties which includes the plans and specifications. For these reasons we will strike any reference to the February 25, 1980 agreement from the complaint.

Next, count three of the complaint alleges because of defendants' refusal to make timely payments plaintiffs were required to borrow money commercially at rates of interest ranging from 18 percent to 20 percent to pay plaintiffs' suppliers and employes. Plaintiffs therefore claim an amount of $1,386.67 as an interest expense of damages. In our opinion this item of damage is not legally recoverable under these circumstances. At this posture of the case any breach given rise to a cause of action to plaintiff has obviously not been determined and plaintiffs' cause is totally unliquidated in this respect. The contract does not provide for any damages in the event of breach to recover an expense of

this nature. The speculation and conjecture in absence of agreement does not permit recovery. In some respects but obviously not directly plaintiffs' claim is for consequential damages or incidental damages due to an alleged breach of contract. This is generally an item of damage consideration wherein there is a breach of warranty of use or fitness for purpose or under the Uniform Commercial Code regarding damages for breach. The general rule appears to be these damages are not recoverable unless a statute provides therefor, the parties agreed thereon or it appears at the time of entering into the contract they were within the reasonable contemplation of the parties: Keystone Diesel Engine Company v. Irwin, 411 Pa. 222, 191 A. 2d 376 (1963), and R. I. Ampus Co. v. Neville Cement Products Corporation, 474 Pa. 199, 378 A. 2d 288 (1977). In the instant case we cannot fairly categorize the interest expense claim within these provisions.

Next, plaintiffs claim attorney fees as an item of damage in pursuit of their claim which would otherwise not be an expense under the agreement except for the arbitrary and vexatious and bad faith conduct of defendants in refusing to pay. Plaintiffs' claim is found in the Judicial Code, 42 Pa.C.S.A. §2503(9). This section permits participants in some cases to receive counsel fees as part of the taxable costs. "Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." We have found no cases interpreting section 2503(9) and none has been given to us by counsel. We have no difficulty in intepreting this section as to another party "in commencing the matter," however, the subsequent

phraseology is certainly unclear and ambiguous, "or otherwise was arbitrary, vexatious or in bad faith." Exactly what the drafters had in mind when they used the word "otherwise" is anyone's guess and at best is certainly sloppy draftmanship. Wrenching interpretations certainly could be made by extrapolating the phrase unreasonably. In our opinion a fair interpretation of the entire subsection is in reference to a party commencing a cause of action without foundation in law or acting in such a manner during the course of the litigation that was arbitrary, vexatious or in bad faith or placing the opposing party in a position that he is compelled to act for legal relief and the conduct in doing so was arbitrary, vexatious or in bad faith.

Here, plaintiff argues because defendants refuse to pay in accordance with the payment schedule as work progressed they acted arbitrarily, vexatiously or in bad faith all to the expense of plaintiff in incurring counsel fees to collect same. If plaintiff be correct this means in every dispute between contracting parties a question of either law or fact or both would be present for resolution. Our interpretation of the section is not that broad. Here, a reading of subsection (9) appears to apply to plaintiff only as the party commencing the matter and not to defendant who is called upon to defend. Reference is also made to subsection (7) wherein counsel fees may be awarded when during the pendency of a matter wherein a participant acts in a dilatory, obdurate or vexatious manner. This section appears to speak to the common law concept of damages for abuse of process wherein a separate cause of action arose in defendant for the abuse after successfully defending plaintiff's vexatious suit. We cannot fairly conclude every litigant contemplating com-

mencing an action or defending one is automatically confronted with the unhappy thought he may have to pay his opponent's counsel fees if he is unsuccessful irrespective of the reason for the dispute.

For these reasons we will strike the attorney fee allegation of damages as not being legally recoverable under this section and under these circumstances.

Next, we will deny defendants' motion to strike for lack of conformity to rules of court by reason of the failure of plaintiffs to attach the plans and specifications to the complaint pursuant to the mandates of Pa.R.C.P. 1019(h). Clearly this rule requires attachment of the writing or the material part thereof if the claim is based upon a writing. Nonetheless at argument it was agreed that the plans and specifications were bulky and not very feasibly attached to the complaint. Nonetheless defendants certainly should be in possession of the plans of their home and this should not present any real problem.

Finally, defendants request a more specific pleading to compel plaintiffs to state with specificity the time and date on which the remainder of the work was completed in reference to Exhibit C and to explain the discrepencies between Exhibit C and Exhibit F. Again, Exhibit C is a change order not contemplated by the main contract. Exhibit F is a billing under date of January 20, 1981 to defendants for certain itemized work and cost thereof. Exhibit C is dated September 3, 1980 and does not appear to be in any reference to work or material supplied in reference to Exhibit F. In our opinion a fair reading of the entire complaint clearly places defendant on notice of plaintiffs' cause and what defendants will

have to defend at time of trial. Paragraph 13 of the complaint makes reference to Exhibit C and the "trimming out" phase of the construction and the other paragraphs in reference to these exhibits does not leave any doubt what plaintiffs are claiming and the basis therefor. In our view defendants can properly answer or deny these allegations.

We will not discuss the demurrer as that motion has been resolved in the prior holdings.

For these reasons we enter the following

## ORDER

And now, June 18, 1981, the preliminary objections are sustained to the extent as set forth in this opinion and plaintiffs shall amend their complaint within 20 days from the date hereof in accordance with this decision.