**BUCKS COUNTY SERVICES, INC., Concord Coach Limousine, Inc. t/a Concord Coach Taxi, Concord Coach USA, Inc. t/a Bennett Cab, Dee–Dee Cab, Inc. t/a Penn Del Cab, Germantown Cab Company, MCT Transportation, Inc. t/a Montco Suburban Taxi, and Rosemont Taxicab Co., Inc., Petitioners**

**v.**

**PHILADELPHIA PARKING AUTHORITY and Pennsylvania Public Utility Commission, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2013.

Decided June 10, 2013.

ments.

Michael S. Henry, Philadelphia, for petitioners.

Carl R. Shultz, Harrisburg, for respondent Philadelphia Parking Authority.

John E. Herzog, Assistant Counsel, Harrisburg, for respondent Pennsylvania Public Utility Commission.

BEFORE: COHN JUBELIRER, Judge, McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Presently before the Court are the preliminary objections of the Pennsylvania Public Utility Commission (Commission) and the Philadelphia Parking Authority (Authority) in response to the amended petition for review seeking declaratory and injunctive relief filed by Bucks County Services, Inc. (BCS), Concord Coach Limousine, Inc. t/a Concord Coach Taxi (Coach Taxi), Concord Coach USA, Inc. t/a Bennett Cab (Bennett Cab), Dee–Dee Cab, Inc. t/a Penn Del Cab (Penn Del Cab), Germantown Cab Company (GCC), MCT Transportation, Inc. t/a Montco Suburban Taxi (Suburban Taxi), and Rosemont Taxicab Co., Inc. (Rosemont) (collectively, Petitioners).

*Background*

Taxicabs which are licensed to provide call or demand services within the City of

Philadelphia (the City) are known as "medallion taxicabs."[1] Six of the seven Petitioners are partial-rights, non-medallion taxicab companies, which received certificates of public convenience from the Commission authorizing them to provide call or demand taxicab service in certain designated areas of the City.[2] Historically, the Commission regulated taxicab service throughout Pennsylvania. With respect to service in the City, the Commission's responsibilities had been set forth in the Medallion Act.[3]

The Medallion Act established heightened standards to elevate the level of taxicab service within the City. Even though Petitioners were authorized to operate in designated areas of the City, they were not subject to the requirements of the Medallion Act because they were not medallion taxicabs. In 2004, the Legislature repealed the Medallion Act and substantially re-enacted it as Chapter 57 of the Parking Authorities Law (commonly known as Act 94).[4] Act 94 transferred jurisdiction over taxicab service within the City from the Commission to the Authority.

Pursuant to Act 94, the Commission and the Authority entered into a Jurisdictional Agreement in 2005, outlining relevant enforcement responsibilities.[5] The Commission ratified this Agreement by order dated February 4, 2005. The Agreement and the Commission's order were subsequently submitted to and approved by the Legislature and then published in the Pennsylvania Bulletin on March 11, 2005. 35 Pa. Bull. 1737 (2005). Shortly thereafter, the Authority promulgated regulations governing medallion and partial-rights taxicabs providing service within Philadelphia (first set of regulations or 2005 regulations).

The Authority then began enforcing this first set of regulations, with a taxicab division inspector issuing three citations to a cab owned by Petitioner GCC for equipment violations and an expired inspection sticker. Petitioner GCC appealed the citations, alleging that the Authority had not properly promulgated the first set of regulations. However, a hearing officer rejected this argument and sustained the citations. The hearing officer imposed a fine against Petitioner GCC in the amount of $1,725.00, and suspended the operation of the offending taxicab for a period of thirty days.

Petitioner GCC subsequently filed a petition for review with this Court reiterating its allegation that the 2005 regulations were invalid because they were not promulgated in accordance with the Commonwealth Documents Law.[6] By opinion and

1. The "medallion taxicabs" have metal medallions affixed to the hoods of the taxicabs. These medallions are a property right with an estimated value of approximately $350,000.

2. Rosemont is not a partial-rights taxicab company and does not have a certificate of public convenience issued by either the Commission or the Authority to provide call or demand taxicab service in the City. Rather, Rosemont is simply authorized by the Commission to provide such service in portions of Delaware and Montgomery Counties.

3. 66 Pa.C.S. §§ 2401–2416 (repealed).

4. 53 Pa.C.S. §§ 5701–5745.

5. Section 22(4) of Act 94 specifically directed the Commission to assist the Authority with the transfer of regulatory authority and empowered the Commission and the Authority to resolve by mutual agreement any jurisdictional issues that may be associated with the transfer. *See* Historical and Statutory Notes to Section 5701, 53 Pa.C.S. § 5701. This section further directed the parties to submit any agreement to the Legislature and, if the Legislature does not reject the same, to publish the agreement in the Pennsylvania Bulletin. *Id.*

6. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602, 45 Pa.C.S. §§ 501–907. Section 202 of the Commonwealth Doc-

order dated April 28, 2010, this Court agreed with Petitioner GCC and reversed the Authority's adjudication. *See Germantown Cab Co. v. Philadelphia Parking Authority*, 993 A.2d 933 (Pa.Cmwlth.2010) (*Germantown Cab I*), *affirmed*, 614 Pa. 133, 36 A.3d 105 (2012) (*Germantown Cab II*).

Nevertheless, the Authority continued to enforce the regulations against Petitioners and continued demanding payment of fines and assessments based upon the invalidated first set of regulations. For example, Petitioner GCC received two citations from a taxicab division inspector in December 2009 for an equipment violation and the lack of an operator's certificate. Petitioner GCC appealed, but the hearing officer issued an order dated May 28, 2010, exactly one month after our *Germantown Cab I* decision, denying the appeal, imposing a fine in the amount of $1,750.00, and suspending the operation of the offending cab for thirty days. Petitioner GCC filed a petition for review with this Court. By opinion and order dated August 3, 2011, we reversed the Authority's adjudication based upon our prior decision in *Germantown Cab I. Germantown Cab Co. v. Philadelphia Parking Authority*, 27 A.3d 280 (Pa.Cmwlth.2011).

Petitioners attempted to resolve the issue of fines and assessments based on the invalid first set of regulations administratively by challenging various enforcement actions with the Authority.[7] The Authority thereafter withdrew its prosecutions and dismissed the actions. However, the Authority continued to demand payment of the fines and assessments and threatened revocations of rights or impoundments of vehicles. For example, by letter dated January 17, 2012, the Authority demanded that Petitioner GCC pay in excess of $310,000.00 in fines and assessments issued under the invalidated first set of regulations and included threats of nonrenewal of Petitioner GCC's operating rights, non-certification of its taxicabs, and impoundment.

*Amended Petition for Review*

On January 23, 2012, Petitioners filed their amended petition for review in this Court's original jurisdiction in the nature of an action for declaratory judgment, injunctive relief, and writs of mandamus.[8] More specifically, the amended petition for review raises the following ten counts:

Count I—Petitioners seek a declaration invalidating all past fines, assessments, and other adjudications based on the Authority's invalidated first set of regulations and preliminary and permanent injunctive relief enjoining the Authority from using the above as a basis for further actions.

Count II—Petitioners seek a declaration invalidating the Authority's new set of regulations for failure to comply with proper rule making procedures as well as preliminary and permanent injunctive relief enjoining the Authority from enforcing these new regulations. Petitioners also seek a writ of mandamus directing the Authority to promulgate its regulations in accordance with all applicable legal and statutory requirements.

Count III—Petitioners seek a declaration that the Authority does not have the

---

uments Law, 45 P.S. § 1202, essentially requires an agency to invite, accept, review, and consider written comments from the public regarding a proposed regulation and permits the agency to hold hearings, if appropriate.

**7.** The Authority has since issued a new set of regulations in compliance with the Commonwealth Documents Law.

**8.** Petitioners also seek an award of attorney fees in each count.

statutory power to regulate partial-rights, non-medallion taxicab companies. Count IV—Petitioners seek a declaration that the Jurisdictional Agreement executed by the Commission and the Authority in 2005 was invalid.

Counts V to X—Petitioners seek declarations invalidating specific aspects of the Authority's new regulations, including regulations relating to vehicle mileage limits, inspections and vehicle partitions, driver certification standards, annual renewal of rights and out-of-service designations, the penalty schedule, and the budget, fee schedule adoption, and assessment processes.

(Amended Petition for Review at ¶¶ 31–139.) The Commission is named as a respondent in only a single count of Petitioners' amended petition for review, i.e., Count IV.

### Preliminary Objections

Both the Commission and the Authority thereafter filed preliminary objections to the amended petition for review. In its preliminary objections, the Commission argues that Petitioners have failed to join a necessary party. While the Commission acknowledges that it is not named as a respondent in Count III, the Commission notes that all parties agree that it should also be named as a respondent in Count III and simply asks this Court to add the Commission as a party to this count.

With respect to Count IV, the Commission argues that since Petitioners seek to invalidate the entire Jurisdictional Agreement, which applies to other carrier classes such as medallion taxicabs and limousines that may be adversely impacted by this proceeding, the failure to include these carriers as parties requires dismissal of

this Count. Additionally, the Commission argues that Petitioners have failed to exhaust an adequate remedy at law because its February 4, 2005 order ratifying the Jurisdictional Agreement constituted an adjudication which was appealable to this Court and that Petitioners' failure to appeal deprives this Court of jurisdiction over the adjudication.[9]

The Authority raises eleven specific preliminary objections which we will address in turn. In its first preliminary objection, the Authority seeks dismissal of Counts II to X of the amended petition for review for failure to exhaust administrative and statutory remedies. Citing *Arsenal Coal Co. v. Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984), the Authority notes that statutory, post-enforcement review is adequate unless the regulation itself causes actual, present harm. The Authority also avers that pre-enforcement review under *Arsenal Coal Co.* is not available where there is an adequate statutory review process or where the regulation's effects would not result in piecemeal litigation or uncertainty in the petitioner's business. *Globe Disposal Co. v. Department of Environmental Resources*, 105 Pa.Cmwlth. 599, 525 A.2d 437 (1987). In the present case, the Authority contends that Petitioners' challenge to the regulations would not result in piecemeal litigation or uncertainty in their businesses.

Next, the Authority seeks dismissal of all ten counts, alleging that Petitioners are not entitled to declaratory relief. In this regard, the Authority contends that declaratory relief is not an optional substitute for established or available remedies, especially where a more appropriate reme-

---

**9.** The Commission notes that Petitioners had thirty days from the entry of this order to file an appeal. Pa. R.A.P. 1512(a).

dy is available. The Authority reiterates its contention that there are adequate administrative and statutory remedies available herein, including post-enforcement review.

Third, the Authority seeks dismissal of Counts I and IV of the amended petition for review, asserting a lack of original jurisdiction. Specifically, the Authority notes that these counts are premised upon prior adjudications which were subject to this Court's appellate jurisdiction. In its fourth preliminary objection, the Authority seeks dismissal of Counts I, III, and IV, alleging that these claims are barred by collateral estoppel.[10] The Authority notes that our Supreme Court has previously held that the authority to regulate taxicabs in and around the City shifted from the Commission to the Authority as early as 2001. *Blount v. Philadelphia Parking Authority,* 600 Pa. 277, 965 A.2d 226 (2009). Additionally, the Authority contends that all other requirements for collateral estoppel are met in this case. Further, the Authority avers that Count I constitutes an impermissible collateral attack and/or untimely appeal of its prior adjudications.

Fifth, the Authority seeks dismissal of Count I based upon the pendency of prior actions. In this regard, the Authority notes that Petitioners and several other taxicab companies filed multiple petitions with the Authority seeking a refund of all charges, fines, fees, and assessments paid since June 2005 and that each of these proceedings was stayed pending a final decision in *Germantown Cab I,* which was only affirmed by our Supreme Court last year. The Authority contends that Count I involves the same parties, the same causes of action, and the same requested relief.

Next, the Authority seeks dismissal of Count IV based upon Petitioners' alleged lack of standing. The Authority states that the Jurisdictional Agreement was nothing more than an attempt by the Authority and Commission to interpret a statute and, unlike a regulation, it is not binding in court as to a third party. *Borough of Ebensburg v. Prevailing Wage Appeals Board,* 893 A.2d 181 (Pa.Cmwlth.2006).

In its seventh preliminary objection, the Authority seeks a dismissal of Petitioners' requests for writs of mandamus in Counts II, IX, and X on the basis that relief may be sought as to these counts through ordinary avenues of judicial review. Additionally, the Authority notes that it had previously submitted its regulations to members of the advisory committee, that its penalty schedule is not a regulation but instead represents internal guidance of the Authority, and that the promulgation of a regulation relating to assessments is not statutorily mandated.

Next, the Authority seeks a dismissal of Petitioners' requests for injunctive relief in each count for failure to state a claim with sufficient specificity. The Authority notes that an action for injunctive relief can only be granted if there is no adequate remedy at law and reiterates that such remedies exist in this case in the nature of post-enforcement review. Next, the Authority seeks a dismissal of Petitioners' requests for attorney fees and costs in each count based upon legal insufficiency. Specifically, the Authority states that generally a party cannot be compensated for the expense of establishing its rights in a legal action, unless a statute or agreement authorizes such compensation. Here, the

---

**10.** Additionally, to the extent that Counts V to X rely on the alleged lack of statutory authority to regulate partial-rights taxicabs, the Authority requests that Petitioners be precluded from making such an argument on the basis of collateral estoppel.

Authority notes that Petitioners' amended petition for review does not reference any statute or agreement authorizing the recovery of attorney fees or costs of litigation.

In its tenth preliminary objection, the Authority asks that Count III be stricken with prejudice due to Petitioners' failure to join a necessary party, i.e., the Commission. The Authority contends that the Commission is an indispensable party to this count and that the failure to join the Commission deprives this Court of subject matter jurisdiction. Finally, the Authority asks that we disregard the factual averments in Count I related to past fines, assessments, and other adjudications because of insufficient specificity. In this regard, the Authority notes that Count I fails to describe the exact nature of these past fines, assessments, and other adjudications and that Petitioners failed to attach copies of the same to their amended petition for review. Thus, the Authority contends that the intended scope of this count is unclear. Petitioners filed answers to each set of preliminary objections essentially denying the allegations contained therein.[11]

## Discussion

### Commission's Preliminary Objections

#### Count III

The Commission's first preliminary objection alleges that Petitioners have failed to join a necessary party, i.e., the Commission itself, in Count III of the amended petition for review. However, the Commission does not seek dismissal of this count. Rather, the Commission states that all parties agree that it should also be named as a respondent in Count III and simply asks this Court to add the Commission as a party to this count. We sustain the Commission's preliminary objection in this regard and direct that the Commission be added as a party to Count III.

#### Count IV

In its second preliminary objection, the Commission alleges that Petitioners have failed to join indispensable parties to Count IV of the amended petition for review, namely medallion taxicab and limousine companies that may be adversely impacted by Count IV's attempt to invalidate the Jurisdictional Agreement. The Commission further alleges that Petitioners failed to exhaust an adequate remedy at law by failing to appeal the Commission's February 4, 2005 order ratifying the Jurisdictional Agreement.

Failure to join an indispensable party deprives the Court of subject matter jurisdiction and is fatal to a cause of action. *Polydyne, Inc. v. City of Philadelphia*, 795 A.2d 495 (Pa.Cmwlth.2002). In undertaking the inquiry as to whether a party is indispensable, the nature of the claim and the relief sought must be considered. *HYK Construction Company v. Smithfield Township*, 8 A.3d 1009 (Pa. Cmwlth.2010), *appeal denied*, 610 Pa. 623, 21 A.3d 1195 (2011). Additionally, section 7540(a) of the Pennsylvania Declaratory

11. In reviewing preliminary objections, we are required to accept as true all well-pled averments set forth in the pleadings and all inferences reasonably deducible therefrom. *Pennsylvania Builders Association v. Department of Labor & Industry*, 4 A.3d 215 (Pa. Cmwlth.2010). However, we need not accept as true conclusions of law, unwarranted inferences, argumentative assertions or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit a different result; where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections. *Id.*

Judgments Act provides that in an action for declaratory judgment, all persons shall be made parties who have or claim any interest which would be affected by the declaration. 42 Pa.C.S. § 7540(a). The requirement that all who have an interest in the declaration be made parties to the action is mandatory. *HYK Construction Company.*

■ In the present case, Petitioners seek declarations as to sections 1 and 2 of the Jurisdictional Agreement.[12] Section 1 relates to medallion taxicabs operating on a city wide basis and in portions of the suburbs and section 2 relates to motor carriers with call or demand rights in the City's suburbs, as well as small portions of Philadelphia. Petitioners constitute the entire class of motor carriers with these section 2 rights. However, count IV fails to join any motor carriers who hold the rights identified in section 1. These motor carriers have a claim or interest which would be affected by the declaration Petitioners currently seek. In accordance with section 7540(a) of the Pennsylvania Declaratory Judgments Act and *Polydyne, Inc.,* the failure to join these indispensable parties is fatal to this count.[13] Thus, the Commission's preliminary objection to Count IV must be sustained and the count stricken from Petitioners' amended petition for review.[14]

### Authority's Preliminary Objections

### Counts II to X

In its first preliminary objection, the Authority seeks dismissal of Counts II to X of the amended petition for review for failure to exhaust administrative and statutory remedies. The Authority also avers that pre-enforcement review under *Arsenal Coal Co.* is not available.

■ The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the exercise of its expertise, and impede the development of a cohesive body of law in that area. *Hoke v. Elizabethtown Area School District,* 833 A.2d 304 (Pa.Cmwlth. 2003), *appeal denied,* 577 Pa. 704, 847 A.2d 59 (2004).

■ However, the exhaustion doctrine is not so inflexible as to bar legal or equitable jurisdiction where the remedy afforded through the administrative or statutory process is inadequate, such as an action challenging the scope of an agency's powers. *Hoke* (student challenging school district's enrollment policy requiring an expulsion hearing did not have to exhaust administrative remedy of having the hearing); *Spooner v. Secretary of Commonwealth,* 114 Pa.Cmwlth. 352, 539 A.2d 1 (1988), *aff'd,* 524 Pa. 584, 574 A.2d 600 (1990) (pool owners and swimmers seeking declaration that the Department of Environmental Resources (DER) did not have authority to enforce regulation requiring lifeguards at any public pool licensed by DER did not have to exhaust statutory remedy in the nature of an appeal of an enforcement order). In *Hoke,* we also noted that the school board could not rule on the legality of the school district's policy, which is what the student sought. Simi-

---

12. Petitioners seek no declaration with respect to section 3 of the Jurisdictional Agreement, which pertains to limousines.

13. Based upon our determination above, we need not reach the Commission's preliminary

objection to Count IV relating to failure to exhaust an adequate remedy at law.

14. Based upon this determination, we will not address the Authority's preliminary objections to Count IV.

larly, in *Spooner*, we noted that it would not be proper for the agency promulgating a regulation to determine whether it had authority to do so.

In the present case, Petitioners challenge the Authority's regulations and its underlying statutory power to issue such regulations. Similar to *Hoke* and *Spooner*, the Authority cannot rule upon the legality of its own regulations or its power to issue the same.

Regarding pre-enforcement review, our Supreme Court in *Arsenal Coal Co.* considered whether equity was available to hear a pre-enforcement challenge to certain DER regulations even though there was a post-enforcement remedy available. The Court in *Arsenal Coal Co.* held that pre-enforcement review was appropriate where the regulation causes actual, present harm and other avenues of review are inadequate. Whether the harm is "present" is determined by whether the effect of the challenged regulations upon the industry is "direct and immediate." *Arsenal Coal Co.*, 505 Pa. at 209, 477 A.2d at 1339. Additionally, the review process is inadequate if the regulation's effects would result in piecemeal litigation or uncertainty in the industry. *Id.*

Petitioners have alleged sufficient facts in their amended petition for review to establish that pre-enforcement review is appropriate in this case. Petitioners are not medallion taxicabs. Traditionally, the medallion taxicabs were subject to more stringent regulations regarding driver certifications and equipment. Petitioners were not subject to these regulations. The new regulations seek to impose identical

regulations on Petitioners and medallion taxicabs. The imposition of these regulations on Petitioners would have a substantial and immediate impact on Petitioners' businesses and may even result in some businesses ceasing operations.

Moreover, Petitioners have alleged sufficient facts establishing that other avenues of review are inadequate. Absent pre-enforcement review, piecemeal litigation is inevitable. Petitioners consist of seven separate companies operating hundreds of vehicles and drivers, all of which would be subject to the new regulations and a multitude of new violations. Even before issuance of the new regulations, both the Authority and this Court have seen numerous cases involving the prior regulations.[15] Certainly, the imposition of the new regulations will result in an increase in this type of litigation.

Because we conclude that Petitioners were not required to exhaust administrative and statutory remedies and pre-enforcement review is appropriate in this matter, the Authority's first preliminary objection must be overruled.

### Counts I to X

In its second preliminary objection, the Authority seeks dismissal of all ten counts alleging that Petitioners are not entitled to declaratory relief in light of other available administrative and statutory remedies. The Authority also alleges that the controversy is not ripe.

With regard to the availability of administrative and statutory remedies, we have addressed that issue with respect to the Authority's first preliminary objection and overrule the second preliminary objec-

**15.** *See, e.g., MCT Transportation v. Philadelphia Parking Authority*, 60 A.3d 899 (Pa. Cmwlth.2013); *Sawink, Inc. v. Philadelphia Parking Authority*, 34 A.3d 926 (Pa.Cmwlth.), *affirmed,* —— Pa. ——, 57 A.3d 644 (2012); *Germantown Cab Co. v. Philadelphia Parking Authority*, 27 A.3d 280 (Pa.Cmwlth.2011); *Germantown Cab Co. v. Philadelphia Parking Authority*, 993 A.2d 933 (Pa.Cmwlth.2010), *affirmed,* 614 Pa. 133, 36 A.3d 105 (2012).

tion. in this regard for the same reasons. Regarding ripeness, the doctrine of ripeness mandates the presence of an "actual controversy" and requires consideration of "whether the issues are adequately developed and the hardships that the parties will suffer if review is delayed." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 607 Pa. 527, 542, 8 A.3d 866, 874 (2010).

In *Bayada Nurses, Inc.*, the Department of Labor and Industry (Department) promulgated a regulation limiting the domestic services exemption from overtime requirements in the Pennsylvania Minimum Wage Act of 1968,[16] thereby requiring Bayada Nurses, Inc. to pay overtime to its home health care aides. Bayada Nurses, Inc. filed a declaratory judgment action with this Court challenging the validity of the Department's regulation, arguing that the regulation improperly limited application of the domestic services exemption set forth in that act. The Department filed preliminary objections alleging legal insufficiency of the pleading. This Court sustained the Department's preliminary objections and dismissed the action.

Bayada Nurses, Inc. appealed, and our Supreme Court directed the parties to further address the issue of ripeness. On this issue, the court ultimately concluded that the matter was ripe for disposition, stating as follows:

> Bayada is faced with the option of continuing its operations, and ignoring the Department's interpretation regarding overtime requirements and risk penalties and fines, including criminal sanctions, or complying with what it believes to be the Department's erroneous interpretation and awaiting a judicial determination in subsequent litigation, in the interim bearing the not insignificant cost of compliance. Declaratory judgment on this issue eliminates substantial expense and uncertainty in the day-to-day operations of Bayada and other health care providers in similar circumstances, as well as the lengthy, costly, and inefficient piecemeal enforcement of the current interpretation of the Act. Thus, we hold that the Department's alleged change in interpretation of its regulation has a direct and immediate impact both upon Bayada and the home health care industry in general.

*Bayada Nurses, Inc.*, 607 Pa. at 544–45, 8 A.3d at 876.

Similarly, in the present case, Petitioners are challenging the new regulations set forth by the Authority. As noted above, the cost to Petitioners to comply with these regulations is substantial, to the point that several businesses may not be able to continue operations. A declaratory judgment in this case would avoid the same expense, uncertainty, and piecemeal enforcement that concerned the Court in *Bayada Nurses, Inc.* Thus, the Authority's preliminary objection with respect to ripeness must be overruled.

### Count I

▮ Next, the Authority seeks dismissal of Count I of the amended petition for review due to a lack of original jurisdic-

---

16. Act of January 17, 1968, P.L. 11, *as amended*, 43 P.S. §§ 333.101–333.115. Section 5(a)(2) of this Act exempted domestic services "in or about the private home of the employer" from the statute's minimum wage and overtime requirements. 43 P.S. § 333.105(a)(2). The Department's regulation further limited the definition of "domestic services" to "[w]ork in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer's pursuit of a trade, occupation, profession, enterprise or vocation." 34 Pa. Code § 231.1(b).

tion, noting that this count is premised upon prior adjudications which were subject to this Court's appellate jurisdiction. Generally, direct appeals from final orders of Commonwealth agencies are within this Court's appellate jurisdiction, and cases within our appellate jurisdiction are excluded from our original jurisdiction. 42 Pa.C.S. § 763(a); *Pittsburgh Board of Public Education v. Pennsylvania Human Relations Commission*, 820 A.2d 838 (Pa.Cmwlth.2003).

▮ However, Count I is not an appeal of any prior Authority adjudications or final orders. Rather, Petitioners ask this Court to give effect to our previous decision in *Germantown Cab I*, wherein we held that the Authority's failure to comply with the Commonwealth Documents Law rendered the 2005 regulations "not valid for any purpose." *Germantown Cab I*, 993 A.2d at 943 (citing section 208 of the Commonwealth Documents Law, 45 P.S. § 1208). Hence, Count I does not fall within our appellate jurisdiction and this preliminary objection must be overruled.

### Counts I and III

▮ In its fourth preliminary objection, the Authority seeks dismissal of Counts I (relating to past fines, assessments, and other adjudications) and III (relating to the Authority's statutory power to regulate partial-rights, non-medallion taxicab companies), alleging that these claims are barred by collateral estoppel. The doctrine of collateral estoppel operates to preclude the re-litigation of issues of fact or law determined in a prior proceeding. *Mason v. Workmen's Compensation Appeal Board (Hilti Fastening Systems Corp.)*, 657 A.2d 1020 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 679, 668 A.2d 1140 (1995). Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to actually litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Callowhill Center Associates, LLC v. Zoning Board of Adjustment*, 2 A.3d 802 (Pa.Cmwlth.2010), *appeal denied*, 610 Pa. 601, 20 A.3d 489 (2011).

The issues raised by Petitioners in Counts I and III are not identical to any issues previously litigated or decided. No court has analyzed the effect of the *Germantown Cab I* decision on the fines and assessments issued pursuant to the invalid first set of regulations, nor has any court determined whether the Authority may use violations of these invalid regulations as a basis for future actions. Additionally, with respect to Count III, while there have been challenges to the Authority's prior regulations, there have been no prior decisions from this Court involving the Authority's statutory power to issue the current set of regulations.

Moreover, to the extent that the Authority argues that Count I constitutes an impermissible attack on prior adjudications, the intervening change in law effectuated by the *Germantown Cab I* decision precludes application of collateral estoppel. *Clark v. Troutman*, 509 Pa. 336, 502 A.2d 137 (1985) (holding that a change in the decisional law of this Commonwealth, in the form of a holding by the Supreme Court that the payment of salary increases pursuant to the Act of October 7, 1976,

P.L. 1101, commonly known as Act 223,[17] to county officials elected to office prior to its enactment is unconstitutional, constitutes the kind of change in legal climate which justifies abandonment of the general principle of estoppel).

However, we do note that a recent unpublished opinion from this Court in *Germantown Cab Company v. Philadelphia Parking Authority* (Pa.Cmwlth., No. 461 C.D.2012, filed January 22, 2013), specifically rejected an argument from Germantown Cab Company that the Authority lacked jurisdiction over partial-rights taxicabs under Act 94, citing section 5714(d)(2) of Act 94, 53 Pa.C.S. § 5714(d)(2).[18] Moreover, we noted in that case that the legislature recently amended section 5714(d)(2) of Act 94 to clarify that partial-rights taxicabs are subject to the Authority's exclusive jurisdiction.[19] Nevertheless, the Authority's fourth preliminary objection must be overruled.

### Count I

■ Next, the Authority seeks dismissal of Count I due to the pendency of prior actions, noting that Petitioners and several other taxicab companies filed multiple petitions with the Authority seeking a refund of all charges, fines, fees, and assessments paid since June 2005, and that each of these proceedings was stayed pending a final decision in *Germantown Cab I*, which was only affirmed by our Supreme Court last year.

■ To sustain a preliminary objection based on the pendency of a prior action, the objecting party must show that the same parties are involved in both actions, the same rights are asserted, and the same relief is sought. *Commonwealth v. Richmond Township*, 917 A.2d 397 (Pa.Cmwlth. 2007). Petitioners correctly note that the prior actions referenced by the Authority seek refunds of monies already paid to the Authority; whereas the present amended petition for review seeks a declaration invalidating all past fines, assessments, and other adjudications based on the Authority's invalidated first set of regulations and enjoining the Authority from using the above as a basis for further actions. Hence, the relief sought in the pending actions is not the same relief Petitioners

---

17. Act 223 was an amendment to the general salary provisions for counties as found in the Act of November 1, 1971, P.L. 495, *as amended*, 16 P.S. §§ 11011–1—11011–13, and provided for immediate salary increases for various county officials, including commissioners, sheriffs, treasurers, controllers, auditors, part-time district attorneys, recorders of deeds, registers of wills, prothonotaries, clerks of courts, coroners, and jury commissioners of counties of the second through eighth classes.

18. At the time Petitioners initiated this action, section 5714(d)(2) provided as follows:

Carriers currently authorized to provide service to designated areas within cities of the first class on a non-citywide basis shall retain their authorization through the authority. The authority shall not grant additional rights to new or existing carriers to serve designated areas within cities of the first class on a non-citywide basis.

19. The revised section 5714(d)(2) currently provides that:

*Carriers authorized by the authority to provide taxicab service to designated areas within cities of the first class on a non-citywide basis* pursuant to section 5711(c)(2.1) (relating to power of authority to issue certificates of public convenience) *shall retain their authorization in those areas of a city of the first class subject to the exclusive jurisdiction of the authority and orders and regulations of the authority issued under this chapter* [Taxicabs and Limousines in First Class Cities]. The authority shall not grant additional rights to new or existing carriers to serve designated areas within cities of the first class on a non-citywide basis.
[Emphasis added].

currently seek and the Authority's preliminary objection in this regard must be overruled.

### Count IV

In its sixth preliminary objection, the Authority seeks dismissal of Count IV based upon Petitioners' alleged lack of standing. However, we have concluded above that this count must be stricken and we need not address it further.

### Counts II, IX and X Mandamus Relief

In its seventh preliminary objection, the Authority seeks a dismissal of Petitioners' requests for writs of mandamus in Counts II, IX, and X because relief may be sought as to these counts through ordinary avenues of judicial review. However, in their brief to this Court, Petitioners have withdrawn all demands for mandamus relief in these counts. Thus, we will strike the mandamus requests in each of these counts from Petitioners' amended petition for review and the Authority's preliminary objection in this regard is declared moot.

### Counts I to X Injunctive Relief

Next, the Authority seeks a dismissal of Petitioners' requests for injunctive relief in each count, again alleging that Petitioners have an adequate remedy at law. Having determined above that no such adequate remedy exists, we will overrule this preliminary objection.

### Counts I to X Attorney Fees and Costs

■ In its ninth preliminary objection, the Authority seeks a dismissal of Peti-

tioners' requests for attorney fees and costs in each count based upon legal insufficiency. Specifically, the Authority states that generally a party cannot be compensated for the expense of establishing its rights in a legal action unless a statute or agreement authorizes such compensation and that no statute or agreement exists herein. In their amended petition for review, Petitioners fail to cite to any statute or agreement which authorizes the recovery of attorney fees or costs of litigation. Petitioners acknowledge a lack of case law in their brief to this Court, but nevertheless cite to section 2503(9) of the Judicial Code, 42 Pa.C.S. § 2503(9), for support. We first note that the Authority did not commence the present matter; rather, Petitioners commenced this matter with the filing of their original petition for review. Additionally, we note that section 2503(9), by its very terms, is a "taxable costs" provision, thereby relating to the conduct of a party at some point during the litigation process. Petitioners' claim to attorney fees is premised on the actions of the Authority in continuing to demand the payment of fines and assessments based upon regulations that this Court held to be invalid. However, these actions were taken prior to the commencement of the current litigation. Petitioners cite no appellate authority, and we have found none, providing for an award of attorney fees under section 2503(9) premised upon pre-litigation conduct.[20] Hence, this preliminary objection must be sustained.

---

**20.** Petitioners cite a common pleas court decision, *McLaughlin v. Gerdts*, 19 Pa. D. & C.3d 293 (1981), for support. In that case, the plaintiff agreed to build a home for the defendants, subject to the defendants' specifications and an agreed-upon payment schedule. As work progressed, the defendants failed to pay and the plaintiff was required to borrow to pay his suppliers and employees. The plaintiff thereafter initiated suit seeking payment from the defendants as well as attorney fees under section 2503(9) of the Judicial Code.

The common pleas court interpreted the "or otherwise" language of section 2503(9) to permit an award of attorney fees when a party is placed "in a position that he is compelled to act for legal relief and the conduct in doing so was arbitrary, vexatious or in bad

Section 2503(9) provides for the award of attorney fees "as part of the taxable costs of the matter ... because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

### Count III

Next, the Authority asks that Count III be stricken with prejudice due to Petitioners' failure to join a necessary party, i.e., the Commission. However, based upon our determination above, which sustained the Commission's preliminary objection to this count and, at the Commission's request, simply added the Commission as a party, we overrule this preliminary objection.

### Count I Factual Averments

In its eleventh and final preliminary objection, the Authority asks that we disregard the factual averments in Count I related to past fines, assessments, and other adjudications because of insufficient specificity. In this regard, the Authority notes that Count I fails to describe the exact nature of these past fines, assessments, and other adjudications and that Petitioners failed to attach copies of the same to their amended petition for review. Thus, the Authority contends that the intended scope of this count is unclear. However, Petitioners correctly note that Count I predominantly involves a legal issue, i.e., whether the Authority can continue to enforce regulations which have been held by this Court to be invalid. The exact nature of these past fines, assessments, and other adjudications is not par-

ticularly relevant to resolution of this issue. Thus, this preliminary objection must be overruled.

Accordingly, the preliminary objections are sustained in part and overruled in part consistent with this opinion.

### ORDER

AND NOW, this 10th day of June, 2013, the preliminary objections of the Pennsylvania Public Utility Commission (Commission) are sustained. The Commission shall be added as a party to Count III of Petitioners' amended petition for review and Count IV is hereby stricken therefrom. The preliminary objection of the Philadelphia Parking Authority (Authority) relating to attorney fees and costs is sustained. The Authority's remaining preliminary objections are overruled, with the exception of preliminary objections six and seven, both of which are rendered moot (the former by reason of the Commission's preliminary objection and the latter as a result of Petitioners' withdrawal of the requested relief). Petitioners' requests for mandamus relief in Counts II, IX, and X of their amended petition for review are hereby stricken therefrom. The Commission and the Authority are directed to file an answer to Petitioners' amended petition for review within thirty (30) days of the date of this order.

---

faith." *McLaughlin*, 19 Pa. D. & C.3d at 298. Nevertheless, the common pleas court refused to award attorney fees to the plaintiff noting that section 2503(9) "appears to apply to plaintiff only as the party commencing the matter and not to a defendant who is called upon to defend." *Id.* In any event, we are not

bound by the common pleas court's decision. *See Huber v. Etkin*, 58 A.3d 772 (Pa.Super.2012) (noting that decisions of common pleas courts are not binding precedent on appellate courts, but may be considered for their persuasive authority).